Mr. Kurt Knickrehm, Director Arkansas Department of Human Services 329 Donaghey Plaza South P.O. Box 1437 Little Rock, AR 72203-1437
Dear Mr. Knickrehm:
You have presented the following questions for my opinion:
 (1) As to operations, maintenance, policies, and procedures within a human development center, does the Department of Human Services or the Developmental Disabilities Services Board have primary control?
 (2) Does either the Director of the Department of Human Services or the Developmental Disabilities Services Board have the unilateral authority to terminate the employment of a superintendent of a human development center?
RESPONSE
Question 1 — As to operations, maintenance, policies, and procedureswithin a human development center, does the Department of Human Servicesor the Developmental Disabilities Services Board have primary control?
It is my opinion that the Board of Developmental Disabilities Services has primary control over the operations, maintenance, policies, and procedure within a human development center.
Human development centers are "institutions for the care, custody, treatment, and training of mentally defective individuals[.]" A.C.A. §20-48-403. Organizationally, they fall within the Division of Developmental Disabilities Services, which is a division of the Arkansas Department of Human Services. A.C.A. § 25-10-102(a)(4). Although the various divisions of the Department of Human Services are subject to the direction, control, and supervision of the Director of the Department of Human Services, A.C.A. § 25-10-102(b)(1)(A), the following limitation on the Director's authority is stated:
 (2)(A) However, the state institutions and the operation of state institutional programs under the jurisdiction of the Board of Developmental Disabilities Services and the Department of Human Services State Institutional System Board, as provided by law, shall be under the control of their respective boards.
A.C.A. § 25-10-102(b)(2)(A).
These "respective boards" are directed to "perform their respective functions and duties under the general guidelines and standards promulgated by the director of the department." A.C.A. §25-10-102(b)(2)(B). However, the Director, of course, cannot contradict the state laws concerning these boards' authority. See A.C.A. §25-15-212(h) (decisions of agencies subject to the Administrative Procedures Act subject to reversal if contrary to state law).
The authority over human development centers is granted by state law to the Board of Developmental Disabilities Services. A.C.A. § 20-48-401 etseq. This Board was created by A.C.A. § 20-48-203, and its powers and duties are addressed in various statutes. Each of these statutes indicates the primacy of the Board's control over the operations, maintenance, policies, and procedures of human development centers. The primary statement of the Board's powers and duties is set forth in A.C.A. § 20-48-205, which states:
(a) The board:
 (1) Shall have charge of the properties used for the purposes of the centers;
 (2) Shall exercise supervision over the appointment, performance of duties which includes such matters as off-premises assignments for educational or training purposes, removal of all employees, and the fixing of their compensation;
(3) Shall exercise supervision over expenditures of the centers;
 (4) May accept and hold in trust real, personal, or mixed property, received by grant, gift, will, or otherwise;
 (5) May make purchases of land or receive grants or gifts of land and take deeds therefor in the name of the State of Arkansas;
 (6) May accept grants or gifts of money from any source whatever and use the money for any of its powers and purposes; and
 (7) May take all action and execute all documents necessary or desirable to carry out its powers and purposes.
 (b) The board may make such regulations respecting the care, custody, training, and discipline of retarded individuals in the centers or receiving mental retardation services and respecting the management of the centers and their affairs as it may deem necessary or desirable to the proper performance of its powers and purposes.
 (c) The board is prohibited from promulgating any rule, or regulation that would set the salary of any employee at the local level unless specifically required to do so by the federal government.
A.C.A. § 20-48-205.
With regard to human development centers specifically, the powers of the Board are stated in A.C.A. § 20-48-206, in pertinent part, as follows:
 (a) With regard to the establishing and operating of the Human development centers, the board, in addition to the authorities, rights, and duties granted by this subchapter, shall continue to have all of its authorities, rights, and duties granted by existing law, which shall include, without limitation, the applicable provisions of 20-48-401 et seq., and 20-48-501 et seq., save only those instances where there are express inconsistencies in which event the provisions of this subchapter shall control.
A.C.A. § 20-48-206(a).
In addition, A.C.A. § 20-48-403 states:
 (a) There are created and there shall be maintained institutions for the care, custody, treatment, and training of mentally defective individuals to be known as human development centers.
 (b) For the purposes of the institutions, the Board of Developmental Disabilities Services is charged with the care and training of mentally defective individuals.
A.C.A. § 20-48-403.
Specifically regarding the control of human development centers, A.C.A. §20-48-415 states:
 (a) The government and control of the centers shall be vested in the board.
(b) The board:
 (1) Shall have charge of the property of the state which may be used for the purposes of the centers;
(2) Shall make and execute its bylaws;
 (3) Shall appoint and remove its officers, attendants, and employees and fix their compensation;
(4) Shall exercise a strict supervision of the centers expenditures;
 (5) May receive and hold in trust property given, by will or otherwise, for the benefit of persons committed to the centers and may make purchases of land and take deeds therefor in the name of the State of Arkansas.
 (c) They shall appoint superintendents who shall not be one of their number.
 (1) The superintendents shall be reputable trained administrators of institutions engaged in the care, custody, treatment, and training of children and youth, with at least five (5) years experience as the superintendent or administrative assistant of such an institution.
(2) The board shall fix their salary and prescribe their duties.
 (d) They shall annually elect from their membership a chairman and vice-chairman, each of whom shall hold office until his successor is chosen.
 (1) The chairman shall preside at meetings of the board, and in his absence, the vice-chairman shall preside.
 (2) A superintendent shall serve as executive secretary to the board and shall maintain an official set of minutes of all votes and actions of the board. These minutes shall be signed by the superintendent as executive secretary and by the chairman of the board.
 (3) The board is authorized to designate the superintendent, or some other competent employee or official of the center, to serve as disbursing officer of all funds of the center.
 (e) The board shall meet at least once each three (3) months and at such other times as the chairman may deem advisable.
 (f) The superintendent of each center shall annually, or more often if required, present to the board for himself and his staff a written report of the management of the center setting forth in detail all receipts and disbursements and general conditions of the affairs of the center.
 (g) The board shall report biennially to the Governor and General Assembly, accompanying their report with the annual report of the superintendent.
 (h) A majority vote of the entire membership of the board shall be necessary to take any board action.
 (i) The board shall have the specific authority to accept gifts or grants of lands in the name of the State of Arkansas and to accept gifts or grants of money from any source whatever. The board shall use all gifts or grants, with the exception of funds appropriated by the General Assembly of the State of Arkansas, for the purpose of construction of buildings, for the operation of the centers, for the purchase of equipment and facilities, for the employment of teachers and necessary personnel, or for any other purpose deemed expedient by the board.
 (j) The board may make such rules and regulations respecting the care, custody, training, and discipline of individuals admitted to the centers and the management thereof and of its affairs as it may deem for the best interest of the centers and the State of Arkansas.
A.C.A. § 20-48-415.
All of the above-quoted statutes give the Board of Developmental Disabilities Services broad authority over the full range of matters affecting human development centers. See also A.C.A. § 20-48-501 et seq.
(granting the Board authority over the acquisition of property and the issuance of bonds for human development centers).
It should be noted that the Board's authority over human development centers does not encroach upon the authority of the Department of Human Services over other programs within the Department's jurisdiction pertaining to "mental retardation". A.C.A. § 20-48-209. Nevertheless, because of the specific statutory grant of authority over human development centers to the Board of Developmental Disabilities Services, and because of the specific limitation on the authority of the Department of Human Services, as stated in A.C.A. § 25-10-102(b)(2)(A), I must conclude that the Board of Developmental Disabilities Services, rather than the Department of Human Services, does exercise primary control over human development centers.
Question 2 — Does either the Director of the Department of Human Servicesor the Developmental Disabilities Services Board have the unilateralauthority to terminate the employment of a superintendent of a humandevelopment center?
It is my opinion that the Board of Developmental Disabilities Services, rather than the Director of the Department of Human Services, has the authority to terminate the employment of a superintendent of a human development center.
I base this conclusion on the plain language of A.C.A. § 20-48-415
(quoted in full previously), concerning the government and control of human development centers. Again, that statute states in pertinent part:
 (a) The government and control of the centers shall be vested in the board.[1]
(b) The board:
* * *
 (3) Shall appoint and remove its officers, attendants, and employees and fix their compensation;
* * *
 (c) They shall appoint superintendents who shall not be one of their number.
 (1) The superintendents shall be reputable trained administrators of institutions engaged in the care, custody, treatment, and training of children and youth, with at least five (5) years experience as the superintendent or administrative assistant of such an institution.
(2) The board shall fix their salary and prescribe their duties.
A.C.A. § 20-48-415(a)(b)(3)(c).
The above-quoted sections unequivocally grant the Board of Developmental Disabilities Services full control over the superintendents of human development centers, including the authority to appoint and remove superintendents.
Again, although the Board of Developmental Disabilities Services must operate subject to the general direction, control, and supervision of the Director of the Department of Human Services, A.C.A. §25-10-102(b)(1)(A), the Director cannot impose conditions on the Board that would undermine the Board's specific grant of authority over superintendents as stated in A.C.A. § 20-48-415. See A.C.A. §25-15-212(h). Moreover, even if the facts should show that the Board has not acted in accordance with the legal direction, control, and supervision of the Director of the Department of Human Services, state law does not grant the Director, in such factual circumstances, to act unilaterally to correct the action of the Board. Another remedy must be sought.
Accordingly, I must conclude that the Board of Developmental Disabilities Services, rather than the Director of the Department of Human Services, has the authority to terminate the superintendents of human development centers.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] The term "the board," as used in A.C.A. § 20-48-415, is defined as "the Board of Developmental Disabilities Services[.]" A.C.A. §20-48-401(2).